**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5233-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KARON D. TOWNES, a/k/a
PRINCE TOWNES,

    Defendant-Appellant.

_____

Submitted October 29, 2019 – Decided  December 11, 2019

Before Judges Yannotti and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-06-1513.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Karon Townes appeals from an order entered by the Law Division on May 24, 2018, which denied his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

On June 26, 2013, an Essex County grand jury returned Indictment No. 13-06-1513, charging defendant with: first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a) (count one); second-degree possession of a firearm without a permit to carry, N.J.S.A. 2C:39-5(b) (count two); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three). Thereafter, defendant was tried before a jury.

At the trial, evidence was presented which established that on October 9, 2011, police officers in East Orange responded to a reported shooting and discovered A.O. lying face down on the sidewalk.[1] A.O. had been shot in the back. When questioned by the officers, A.O. identified defendant as the shooter.

A.O. testified that he has known defendant and his family since he was "a little kid growing up." A.O. and defendant regularly sold drugs in a building located in East Orange. Several months before the shooting, defendant

---

[1] We refer to the victim using initials for the purpose of confidentiality.

approached A.O. about selling drugs together. A.O. declined because defendant engaged in certain actions that would attract the police to the building.

A.O. testified that two days before the shooting, he saw a woman on North Walnut Street and told her to go home to her kids. He then overheard defendant tell the woman, "Don't worry, I am going to get [A.O.] robbed." A.O. confronted defendant and told him he is "always causing problems." Later that evening, A.O. and defendant ran into each other again. A.O. grabbed defendant by the shirt and hit him. A bystander separated them, and A.O. departed.

On October 9, 2011, defendant approached A.O. and said he wanted to resolve their disagreement. Defendant got into A.O.'s car, and they drove around together for a period of time. Defendant again asked A.O. if he was interested in selling drugs together. A.O. was not interested. He told defendant to be more careful, use his mind, and enroll in a community college.

Defendant asked A.O. to stop the car so he could purchase food and a cigar. He told A.O. to park on a side street, in front of a dark, vacant building, so they would be off camera and away from the police. A.O. parked the car in front of a driveway and continued talking to defendant. A.O. then exited the car and walked in front of the vehicle.

When he reached the front of the car, A.O. heard "pop, pop" sounds and felt a bullet hit his back. After the first shot, A.O. fell on his face. He was shot a second time while on the ground. An ambulance arrived within minutes, and A.O. told the first responding officer that "We We shot [him]." Defendant is known as "We We."

The jury found defendant guilty on all charges. On July 11, 2014, the judge denied defendant's motion for a new trial and sentenced defendant on count one to a term of seventeen years of incarceration, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court merged count three with count two, and sentenced defendant on count two to a concurrent, seven-year prison term, with five years of parole ineligibility.

Defendant filed a direct appeal. We affirmed defendant's convictions and sentences. State v. Townes, No. A-0228-14 (App. Div. May 24, 2016) (slip op. at 11). Thereafter, the Supreme Court denied defendant's petition for certification. State v. Townes, 229 N.J. 601 (2017).

In June 2016, defendant filed the petition for PCR, asserting a claim of ineffective assistance of counsel. He alleged his attorney was ineffective because he did not meet with him, discuss trial strategy, and prepare the case

A-5233-17T3

adequately. Defendant claimed he rejected the State's plea offer because he believed his attorney had not advised him properly. He asserted that trial counsel erred by failing to inform the jury he was "legally blind." He claimed his attorney was ineffective because he failed to seek a mistrial after defendant told his attorney the foreman of the jury had approached his brother's friend and said he would vote "not guilty" if defendant paid him money.

Defendant further alleged his attorney was deficient in failing to challenge the identification procedures the police used, and that the testimony of one of the officers should have been stricken because the officer had little recollection of the events in question. In addition, defendant claimed his attorney was ineffective because he failed to object to the admission of certain "other crimes" evidence, and he had been denied a fair trial due to cumulative errors.

Defendant sought an evidentiary hearing on his petition. The PCR court conducted an evidentiary hearing, but it was limited to defendant's claim that his attorney erred by failing to present evidence that defendant's eyesight made him "legally blind." The court found that the other issues raised had either been resolved on direct appeal or were without merit.

Thereafter, the PCR court filed a written opinion finding that based on the evidence regarding defendant's eyesight, counsel made a reasonable tactical

decision not to present evidence that defendant was "legally blind," since the defense was more likely to succeed if that evidence was not presented. The PCR court therefore denied relief and memorialized its decision in an order dated May 24, 2018. This appeal followed.

On appeal, defendant argues:

> [POINT I]
> THE [PCR] COURT ERRED IN DENYING DEFENDANT'S PETITION WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO MEET WITH DEFENDANT AND PREPARE FOR TRIAL.
>
> [POINT II]
> DEFENDANT DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL BECAUSE, AS A RESULT OF HIS ATTORNEY'S FAILURE TO ACCURATELY INFORM HIM REGARDING THE STRENGTHS OF THE STATE'S CASE, HE REJECTED THE PLEA OFFER AND INSTEAD PROCEEDED TO TRIAL SUBSEQUENTLY RECEIVING A SENTENCE MUCH GREATER THAN THAT EMBODIED IN THE PLEA OFFER.
>
> [POINT III]
> DEFENDANT DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO PURSUE A WADE HEARING PRIOR TO TRIAL.

6

[POINT IV]
DEFENDANT DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL, AS A RESULT OF WHICH THE [PCR] COURT ERRED IN DENYING DEFENDANT'S PETITION SINCE THE FACTUAL FINDINGS MADE BY THE [PCR] COURT UNDERLYING ITS DENIAL WERE NOT SUPPORTED BY THE RECORD ESTABLISHED AT THE EVIDENTIARY HEARING.

II.

Initially, we note that an evidentiary hearing is only required on a PCR petition if the defendant presents a prima facie case in support of relief, the court determines that there are material issues of fact that cannot be resolved based on the existing record, and the court finds that an evidentiary hearing is required to resolve the claims presented. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). Furthermore, "[t]o establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b).

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668, 693 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).

7                                                                    A-5233-17T3

Under the test, a defendant first "must show that counsel's performance was deficient." Strickland, 466 U.S. at 693. Defendant must establish that counsel's performance "fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid.

Defendant also must show "that the deficient performance prejudiced the defense." Ibid. To establish prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the matter. Id. at 698.

## III.

On appeal, defendant argues he was denied the effective assistance of counsel because his trial attorney failed to adequately inform him regarding the strengths of the State's case. He contends that, as a result, he rejected the State's plea offer and ultimately received a sentence longer than that embodied in the offer.

At the evidentiary hearing, defendant's attorney testified about his representation of defendant. He stated that he met defendant in jail "three or

four times," and numerous other times outside of jail. Counsel also testified that he reviewed videos and reports with defendant during numerous meetings, which typically lasted about an hour. He also developed a relationship with defendant's family.

Defendant asserts that because the PCR court denied his request for an evidentiary hearing on this issue, he was precluded from presenting the court with facts supporting this claim and how counsel's alleged error affected the verdict. Defendant asserts that facts exist that would have changed the outcome of the case.

Here, defendant did not submit any certifications or affidavits setting forth the factual basis for his claim as required by Rule 3:22-10(c). To establish a prima facie claim, defendant "must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Here, defendant did not present any competent evidence to support this claim.

We are convinced that the PCR court did not err in denying defendant an evidentiary hearing on this claim. Defendant failed to present sufficient evidence to satisfy either prong required to establish a prima facie case of ineffective assistance under the Strickland test.

Next, defendant argues he was denied the effective assistance of counsel because his trial attorney failed to advise him concerning the strengths of the State's case. He contends because of counsel's allegedly inadequate advice, he rejected the State's plea offer, went to trial, was found guilty, and was sentenced to a prison term longer than the term offered in the plea offer.

It is well-established that the Strickland standard applies to claims of ineffective assistance of counsel associated with a guilty plea. State v. Gaitan, 209 N.J. 339, 350-51 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)). To establish the prejudice prong under Strickland in the context of a plea, a defendant must establish that "there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial." Id. at 351 (quoting State v. Nuñez-Valdez, 200 N.J. 129, 139 (2009)). A defendant must show that it would have been rational to reject the plea offer, insist on going to trial, and that "he probably would have done so . . . ." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

On appeal, defendant contends he did not accept the State's plea offer, which was for a five-year term with a three-year parole disqualifier, because "trial counsel never explained the strengths of the State's case against him, [or]

. . . discuss any potential defense strategy with him." He contends that because the State's case was weak, trial counsel's advice to proceed to trial was unreasonable and unwarranted.

At a proceeding on August 12, 2013, the judge asked defendant if he understood the risk of going to trial, and defendant replied, "Yes." The judge stated that defense counsel was competent and she was sure counsel had advised defendant that if he went to trial, he could be sentenced to a term substantially longer than the sentence the State had proposed in its offer.

The judge noted that she was there to ensure defendant had a fair trial. She asked if defendant understood that, and defendant replied, "Yes." At the PCR hearing, defense counsel testified that he met with defendant and discussed "plea offers and the strength of the case, and possible defense[s]."

We are convinced defendant failed to establish his trial counsel's advice regarding the strengths of the State's case "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 693. The record shows that defendant knew the evidence that the State intended to present in support of its case. He also was aware of the State's plea offer. Defendant elected to proceed to trial.

Defendant has not cited with any degree of specificity how defense counsel's advice regarding the strengths of the State's case was inadequate. He

A-5233-17T3

failed to show that he would have made a different decision regarding the plea offer if counsel had provided different advice.

The PCR judge correctly found that defendant has not presented a prima case of ineffective assistance of counsel with regard to the advice defense counsel provided regarding the strengths of the State's case and the plea offer. The judge correctly determined that an evidentiary hearing on this claim was not required.

V.

Defendant further argues he was denied the effective assistance of counsel because his trial attorney failed to seek a <u>Wade</u> hearing to challenge A.O.'s identification of him as the shooter.[2] He argues the PCR court erred by rejecting this claim.

"A <u>Wade</u> hearing is required to determine if [an] identification procedure was impermissibly suggestive and, if so, whether the identification is reliable. [A] trial court conducts a <u>Wade</u> hearing to determine the admissibility of the out-of-court identifications." <u>State v. Micelli</u>, 215 N.J. 284, 288 (2013).

To be entitled to a pretrial <u>Wade</u> hearing, the defendant must first present "some evidence of suggestiveness" that could result in a misidentification. <u>State</u>

---

[2] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

v. Henderson, 208 N.J. 208, 238, 288 (2011). When evaluating whether evidence of suggestiveness warrants an evidentiary hearing, courts consider various "system variables," which include pre-identification instructions, witness feedback, and whether the witness viewed the defendant multiple times. Id. at 289-90.

Here, defendant presented no evidence of suggestiveness that could result in a mistaken identification. As noted previously, at trial, A.O. testified that he knew defendant and his family since he was a "little kid." After the shooting, A.O. identified defendant as the shooter. The officers later showed A.O. a picture of defendant to confirm his identification, but that was not impermissibly suggestive because A.O. knew defendant personally and named him as the shooter before the officers showed defendant the photo.

Furthermore, at the PCR hearing, defense counsel stated that he was aware that A.O. knew defendant. He indicated that he did not seek a hearing to challenge A.O.'s identification because he believed he "might not be able to" establish a basis for a Wade hearing.

We are convinced defendant failed to present a prima facie claim of ineffective assistance of counsel regarding his attorney's decision not to seek a Wade hearing on A.O.'s identification. He failed to present sufficient evidence

to show that counsel's decision "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 693.

Defendant also failed to establish that he was prejudiced by counsel's handling of this issue. He did not show the trial court would have granted the request for a Wade hearing, or that the court would have barred the State from presenting evidence of A.O.'s out-of-court identification.

VI.

Defendant also contends he was denied the effective assistance of counsel because his trial attorney failed to present evidence that he was "legally blind" at the time of the shooting.

At the evidentiary hearing, defendant stated that when he was about eighteen years old, he was diagnosed with Stargardt disease, which is a retinal disorder characterized by macular degeneration that causes progressive vision loss. Defendant said he informed his attorney of his condition, and asserts that counsel should have argued that defendant could not have shot the victim because he "can't see at night, at all, except for a light . . . if it's a light directly in front of [him] . . . ."

At the hearing, defense counsel testified about defendant's impaired eyesight. He said he knew defendant had vision problems, and that defendant

would have to "look very closely at the screen" when viewing videos on a laptop, but received no assistance in any form. He explained, however, that defendant's impaired vision was not "a plausible defense" because the disease is degenerative, and his eyesight at the time of the crime was even better than it was when he went through trial unassisted.

Defense counsel stated that he and defendant had spoken about his impaired vision, but medical testimony "would have clearly shown it was not impossible for [defendant] to have committed the crime." Counsel stated that a doctor would have testified that defendant was capable of seeing at a distance of twenty feet what other persons with twenty-twenty vision are able to see at a distance of one hundred feet. Counsel noted that the "shooting was alleged to have occurred a close range."

Counsel also noted that he pursued a claim of misidentification. He stated that he did not assert that defendant was present at the crime scene and could not have committed the crime. Instead, counsel had argued that defendant was not present, noting that he was arrested a short distance from the location of the shooting. Counsel asserted that defendant had been wrongly identified and he believed he had sufficient evidence to raise that defense.

A-5233-17T3

The PCR judge found that defense counsel made a reasonable strategic decision to focus on misidentification rather than defendant's impaired vision. The judge noted that defendant had not informed the arresting officer of his disability. Moreover, several months before the shooting, defendant was seen on a video "engaging in hand-to-hand drug transactions," and he did not appear to be constrained by his eyesight.

The judge also pointed out that in the video, defendant is seen moving about the neighborhood with no assistance or aids. The judge noted that

> The only evidence presented that [defendant's] blindness was so significant as to make the shooting impossible was [defendant's] own testimony at the PCR hearing. He testified that he could not see at night, other than being able to see street lights. More significant [was his admission] that he has problems with memory, [which] undermin[ed] the credibility of his testimony.

We are convinced that the PCR court correctly determined that defendant failed to establish that he was denied the effective assistance of counsel because his attorney failed to present evidence that defendant had impaired vision. There is sufficient credible evidence in the record to support the court's finding that trial counsel made a reasonable strategic decision not to raise a defense based on legal blindness, and to instead assert a defense of misidentification. Moreover, defendant has not shown he was prejudiced by counsel's handling of

16

this issue. He failed to show that the result of this proceeding would have been different if counsel had raised this issue.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION